## McMILLAN vs McKEE.

### Opinion Delivered October 26, 1901.

*1.  Equity—Verdict Advisory Only.*

>   In equity cases, the verdict of the jury is merely advisory, and
>   the court is at liberty to disregard it in whole or in part.

*2.  Breach of Warranty—Measnre of Damages—Verdict—Reformation.*

>   Suit was filed upon certain promissory notes given for the
>   purchase price of a stallion. Defendant pleaded breach of
>   warranty. The court charged the jury that the measure of
>   damages was the difference between the value of the horse at
>   the time of the sale, if as warranted, and the actual value.
>   The jury found the actual value at the time of sale $498.81.
>   They found the damages sustained by the defendant for feed-
>   ing and keeping the stallion to be $398.81, and gave a verdict
>   for plaintiff for $100.  *Held*, Not error, and in the absence of
>   the evidence upon which the verdict was rendered, the court
>   did not err in entering judgment upon the verdict for $100,
>   whether this be regarded as the construction of the verdict
>   intended by the jury or whether it be regarded as having been
>   reformed by the court.

Appeal from the United States Court for the South-
ern District.

HOSEA TOWNSEND, Judge.

Suit by J. N. McKee against George W. McMillan
and another.  Decree for plaintiff.  Defendants appeal.
Affirmed.

This was a suit filed in the United States Court for
the Southern district of the Indian Territory, at Ardmore,

on the 8th day of October, 1895, by the appellee, J. N, McKee against George W. McMillan and C. A. Burns, upon two promissory notes, both dated February 27th, 1895, one for the sum $200, and the other for $235, each bearing interest at the rate of 10 per cent. per annum from date, and to forclose a mortgage upon certain property therein described to secure the payment of the notes. The plaintiff below alleged that the property covered by the mortgage was insufficient security, and asked for the appointment of a receiver. The notes were executed for the purchase money of a stallion sold by plaintiff to the defendant George W. McMillan, who claims that the plaintiff warranted the horse to possess certain qualities, and that there was a total breach of warranty and failure of consideration. The other defendant was surety on the notes. Upon the filing of defendant's answer, the cause, in April, 1898, was referred to Chilion Riley as special master, who filed his report, and on the 30th day of April, 1898, the defendants filed their exceptions to the report, which were sustained, and moved the court to refer certain issues growing out of their defense of failure of consideration and breach of warranty to a jury, which motion was sustained by the court in an order which, among other things, provides: "The court is further of the opinion that the motion of the defendants to have all issues growing out of defendant's plea of failure of consideration and breach of warranty referred to a jury should be sustained; wherefore it is adjudged and decreed by the court that the report of the master in chancery be not confirmed, and that the issues growing out of and arising from the pleas of failure of consideration and breach of warranty be, and the same are hereby, referred to a jury." The issues which were tried before a jury arose upon the defendant's amended answer filed January 18, 1899, which contains the following, among other, allegations: "Defendant McMillan alleges that, as a part of the contract of sale of said stallion by the plaintiff to

the defendant, the said plaintiff warrants said stallion to be
one black Morgan and Canadian stallion, 8 years old, 15½
hands high, no brand; the title to which he was to fully
warrant and defend; and that he further warrants the said
stallion to be a sure foal getter, properly handled and taken
care of, and of a quiet disposition. Now, the defendant
alleges and charges the fact to be that said stallion was not
a sure foal getter when properly handled; that in truth and
in fact he was much older than 8 years old, and was wholly
unfit for the purposes for which he was sold by the plaintiff
to the defendant; that the defendant bought said stallion for
the purpose of breeding him, and that the plaintiff well
knew such purpose; that in truth and in fact the said horse
was old and worn out, and wholly unfit for the purposes for
which this defendant bought him; that the defendant exer-
cised all due and proper care in the treatment of said horse,
but that he rapidly went to pieces, and finally died; that defend-
ant kept said horse a considerable time after he purchased
him, in hopes that he might turn out to be of use to this defend-
ant, and in the hope that he might turn out as warranted by
the plaintiff, but that, after keeping said horse for about
eighteen months, he died, after having declined rapidly with
the very best treatment it was possible for defendant to give
him; that the defendant, relying upon the warranty of the
plaintiff that said horse was a sure foal getter, and suitable
for the purpose of breeding, expended large sums of money
in taking care of said horse, and in endeavoring to use him
for the purpose of breeding as aforesaid; that he expended
for hire of a hostler to take care of said horse the sum of
$150, and that he expended in feed of said horse the sum of
$180, and in advertising the fact that he had such horse for
breeding purposes the sum of $——, and other incidental
expenses connected with the keeping of said horse the sum
of $——; that, after defendant ascertained that said stallion
was defective, and did not comply with the terms of the

warranty, he notified plaintiff, and offered to return the horse to plaintiff, and give him $10 for each and every colt gotten by said horse during the time he stood him."

The case was tried before a jury on the 18th day of January, 1895. In order to more clearly show the issues submitted to the jury, the judge's instructions to the jury are quoted in part, as follows: "You are instructed that the measure of damages for the breach of the warranty in the sale of this horse, should you find that there was a breach, is the difference between the value which the horse had at the time of the sale, if he had been such horse as stated in the warranty, and the actual value that the horse had as may appear to you from the evidence; and should you find that the horse was properly handled and taken care of, and was not a 'sure foal getter,' then the defendant is entitled to recover the amount of expense that he was to for the advertising of the horse and of keeping and standing him. Should you find that the defendant sustained damage by reason of the breach of warranty, you should estimate the the amount of that damage in dollars and cents, and state the amount due on the notes sued on by the plaintiff in dollars and cents, and deduct one from the other." The verdict of the jury reads as follows: "We, the jury duly sworn in the above cause, do find that the amount of the note sued on is $648.81, and that the difference between the value of the stallion as warranted and as the evidence shows him to be is $498.81. We further find for the defendant damages for feeding and keeping the stallion the sum of $398.81. Due plaintiff, McKee, $100." Upon the coming in of the verdict, the court made an order reciting that "the verdict is received by the court, and filed, and the cause referred back to the equity docket for further proceedings." On February 3, 1899, the cause came on for hearing again on the equity side of the docket, and the defendants presented to the court their motion to confirm the verdict, and for judgment accord-

ing to the special finding of the verdict; but the court over-ruled the motion in an order which reads as follows: "On this day this cause came on to be heard on the motion of the defendants, G. W. McMillan and C. A. Burns, to confirm and ratify the virdict rendered herein by the jury after this cause was transferred to the law docket, and upon the issues therein joined, and that the court rendered judgment according to the special findings of the jury in said verdict in favor of the defendant G. W. McMillan for the sum of $248, and for all costs of suit; and the court, after duly considering said motion, and being fully advised in the premises, hereby grants the same in so far as the confirmation and ratification of the verdict of the jury is concerned, and hereby ratifies said verdict, but the court overrules said motion in so far as the rendition of the judgment in accordance with the special findings therein are concerned in favor of the defendant for the sum of $248. To which action of the court in overruling said motion for judgment in favor of defendant G. W. McMillan the said defendant in open court duly excepted." Thereupon the court, on the 3d day of February, 1899, rendered its final decree, which contains the following, among other, recitals: "And it further appearing to the court that the verdict is supported by the evidence, it is hereby ordered that said verdict be in all things confirmed; and it is further ordered, adjudged, and decreed by the court that the plaintiff, J. N. McKee, do have and recover of and from the defendant C. A. Burns the sum of $100, together with the costs of this suit, for which let execution issue." On the same day the defendants filed their motion for a new trial, which was overruled. Exceptions were duly taken, and an appeal has been prosecuted to this court to reverse the judgment.

*W. A. Ledbetter* and *S. T. Bledsoe*, for appellants.

*Albert Rennie, John A. McClure, R. Stewart Dennee,* and *Robert H. West,* for appellee.

SPRINGER, C. J.  Appellants submit their case upon the assignment of one error, as follows:  "The court erred in overruling the motion of the defendants below for judgment in favor of the defendant McMillan upon the verdict for the sum of $248, and in overruling the defendants' motion for a new trial."  The appellants, in their brief, insist that the jury found:  First, that the defendants, at the time of the trial, were indebted to the plaintiff in the sum of $648.81, being the amount of the notes sued on; and, second, that they found that the plaintiff was indebted to the defendant in the sum of $498.81, being the difference between the value of the stallion as warranted and as the evidence showed him to be; and that, thirdly, the jury found for the defendant McMillan damages for feeding and keeping the stallion, the sum of $398.81,—the two items aggregating the sum of $897.62.  Appellants insist further that the recital in the verdict, "Due plaintiff, McKee, $100," is inconsistent with the special finding of the jury, and must be disregarded as surplusage.  Their contention, therefore, is that it was error for the court to refuse to render judgment for defendant and against the plaintiff for the sum of $248; and that it was error to render judgment in favor of plaintiff and against both of the defendants for the sum of $100 and costs of suit.  Counsel for appellants then state as follows:  "This being an equity suit, the trial judge was not necessarily bound by the verdict of the jury."  The counsel for appellee concede this to be the law governing the trial judge in equity cases.  The verdict of the jury was merely advisory, and the court was at liberty to disregard it in whole or in part.  However, any error that the judge may commit in revising the verdict would be subject to review on appeal, if exceptions were were properly and timely taken, and if all the evidence

before the jury upon which the trial judge acted in revising the verdict was preserved in a bill of exceptions. In the case at bar the record does not preserve the evidence in the case. But counsel for appellants rely upon the form of the verdict to sustain their contention that the defendant was entitled to a judgment on the verdict for $248. This contention is untenable. Under the instructions of the court to the jury they were informed "that the measure of damages for the breach of warranty in the sale of this horse, should they find that there was a breach, is the difference between the value that the horse had at the time of the sale if he had been such horse as stated in the warranty, and the actual value that the horse had as may appear to you from the evidence." It is evident from the text of the verdict that the jury found that there was a partial failure of the warranty. Under that finding the amount agreed to be paid in the notes which were given ceased to be a factor in determining the amount which the plaintiff was entitled to recover. If there was a partial failure of warranty, the amount expressed in the note was not the amount which was to be paid, but the amount to be paid was the actual value which the horse had at the time of the sale, as appeared to the jury from the evidence. This actual value at the time of the sale, as appeared to them from the evidence, was evidently expressed by this verdict as $498.81. That was the sum which the jury evidently found was the value of the horse as appeared to them from the evidence. The jury further found the damages sustained by the defendant in feeding and keeping the stallion to be $398.81. Deducting the latter from the former sum, leaves the sum of $100, which the jury found to be due to the plaintiff, McKee. This is the construction which the court placed upon this verdict. The evidence, which is not preserved in the record, we must assume, was such as to support this theory of the court if it had been preserved in a bill of exceptions and printed in the

record.   In the absence of the evidence on which the court construed this verdict, or even reformed it, if the verdict, upon the face of it, will not bear the construction which the court gave it, this court will assume that such evidence, if produced, would support either theory upon which the court may have acted.   If the judge reformed the verdict of the jury, it was his province to do so.   If he construed it as stated, he construed it in the light of the evidence.   In either event, there is no error in his action.   The judgment of the court below is therefore affirmed.

CLAYTON and THOMAS, JJ., concur.